## MENGES v. EDWARDS MOTOR CAR CO.

(Supreme Court, Appellate Division, Second Department.   December 18, 1914.)

1. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—ACTIONS—EVIDENCE —JURY QUESTION.

The question whether the master furnished an injured employé with a reasonably safe place to work *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 107*)—INJURIES TO SERVANT—SAFE PLACE TO WORK.

While ordinarily an employer is not bound to change the structural condition of the building in which the employé accepts work, he is bound to protect the employé, when the nature of the work makes that structural condition dangerous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199– 202, 212, 254, 255; Dec. Dig. § 107.*]

Appeal from Trial Term, Kings County.

Action by Charles A. Menges, Jr., against the Edwards Motor Car Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

William H. Griffin, of New York City, for appellant.

Edward J. Walsh, of New York City, for respondent.

STAPLETON, J.   The action is to recover damages for injuries sustained by plaintiff while in the defendant's service, and alleged to have been caused by defendant's negligence.   There was a notice served under the employers' liability provision of the Labor Law. The complaint was dismissed at the close of the plaintiff's case, and the plaintiff appeals.

One of defendant's foremen, Norkett, and his assistant, Rash, were working overtime.   They were moving in defendant's factory, by means of a portable crane weighing 1,000 pounds, a motor engine weighing 500 pounds from the testing room to the assembly room. The crane sat on four wheels, the front two of which were but 9 or 10 inches apart and swung on a swivel.   On the bed of the truck, over the front wheels, there was a jib with an arched neck that spanned over towards the rear.   From this arched neck the motor was suspended by means of a rope.   It was entirely clear of the bed of the crane.   There were no guy ropes or other attachments for holding it in place or securing it to the crane itself, so that it swung in unison with the crane's movements.

The motor was being moved from one room to the other through a passageway which ran in front of both rooms.   The floor of the passageway was convex.   One of its sides sloped down to the door of the chassis assembly room, the floor of which was level and about 6 inches higher than the floor of the passageway at the point of con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tiguity. In an attempt to overcome this difference in floor levels, a piece of wood 4 inches wide, 2 inches deep, and of a length sufficient to span the width of the rear wheels, was there laid. With this piece of wood in place, there remained a difference of 4 inches in the adjoining floor levels. The foreman and his assistant had brought the crane down the passageway. They turned it at right angles and faced it towards the door leading into the assembly room. The front wheels, plaintiff's witness thought, were over the sill. When the front wheels were over the sill, the suspended load remained perpendicular while the bed of the crane was elevated in front. Additional help was needed in order to pull the rear wheels over the sill. The foreman called plaintiff, who responded. The accident is thus described by the foreman, who was plaintiff's witness:

The plaintiff "placed his hand on the crane jib. To get this over the sill, we had to push it back a little ways in order to get it running again; just a matter of a few inches. On the rear wheels coming up over the sill to the higher floor level, the motor in assuming a perpendicular position again swung the opposite way towards the crane jib, * * * toward the front. The fan pulley on the engine crank shaft has a sharp edge on it, rather sharp, very little rounded. This fan pulley jammed Menges' finger against the arm of the crane jib. * * * That caused the injury to his hand. * * * Mr. Rash" (the assistant) "was pulling on the handle. * * * I was endeavoring to steady the engine to counteract the sway."

In moving the motor engines by means of this crane, never less than three men, and more often four, were employed. He further testified that plaintiff was a toolroom clerk. He had seen plaintiff in various occupations. He had seen him assisting in the stockroom. The work in the stockroom consisted of assorting materials and classifying them. He had also seen plaintiff assisting the pay clerk. That was clerical work. As far as he knew, plaintiff's duty was to give out tools to the men. He neither hired nor discharged the plaintiff. He did not tell the superintendent or the assistant superintendent that he was going to use the plaintiff. No one told him to use the plaintiff. The plaintiff testified that he had never done work of that character before. He took such orders as this particular foreman gave him. On numerous occasions he had received instructions from this foreman as to his work. The assistant superintendent told him to take orders from the different foremen.

[1, 2] The plaintiff's only point is that the defendant's negligence was clearly a question for the jury. Under this point he states nine different specifications of actionable negligence alleged in the complaint, to wit: That defendant furnished an unsafe place; that it directed the removal of the crane with an unsafe number of men; that it omitted to see that the ways, works, machinery, and plant were in proper condition; that it omitted to take any steps to elevate the crane at the driveway, so that it could be moved past the same in safety; that it omitted to remedy the dangerous condition existing at the doorway; that it omitted to warn plaintiff of the dangers incidental to the removal of the motor and crane; that it omitted to take any precaution for the safety of the plaintiff; that it omitted to give plaintiff any instructions in the doing of the work; that it failed to provide plaintiff with a safe place to work.

From an examination of the evidence, we think the liability or nonliability of the defendant depends on whether or not there was a. violation of its duty to furnish plaintiff with a reasonably safe place to work, and that upon this assignment of negligence a question of fact arose. While ordinarily an 'employer is under no duty to change the structural condition of the building in which the employé accepts employment, there is an obligation to protect the employé when the nature of the work makes that structural condition dangerous. See Dzubak v. West Side Foundry Co., 163 App. Div. 121, 148 N. Y. Supp. 403..

The judgment should be reversed, and a new trial granted; costs to abide the event.

JENKS, P. J., and THOMAS and PUTNAM, JJ., concur. CARR, J., not voting.